IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

            **v.**                    **Criminal No.** 18-298 (FAB)

JORGE L. RODRÍGUEZ-SANTOS,

    **Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant Jorge Rodríguez-Santos ("Rodríguez-Santos")'s post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). (Docket No. 111.) In the alternative, Rodríguez-Santos requests a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). For the reasons set forth below, Rodríguez's motion is **DENIED**.

I.    **Background**[1]

On October 10, 2015, the Puerto Rico Police Department received a phone call from an anonymous informant regarding an unidentified person and vehicle, both of which were "burning [on] fire." (Docket No. 100 at pp. 81—82.) The informant disclosed

---

[1] The Court conveys the facts throughout this Opinion and Order in the light most favorable to the jury's verdict. United States v. Rodríguez-Marrero, 390 F.3d 1, 6 (1st Cir. 2004).

that the person and vehicle were located along State Road No. 504, a "very rural and lonely area" in Ponce, Puerto Rico.  Id. at p. 82.

Homicide investigator Héctor Cappas-Mateo arrived at the scene of the fire, where he observed a 2008 white Mitsubishi Lancer and a female body "still steaming with smoke."  Id. at p. 82.  A forensic pathologist identified the calcinated body as that of María Mayol-Rivera ("Mayol") with the aid of dental records.  Id. at p. 163.  Three bullet wounds to the head caused Mayol's death.  Id. at pp. 156-57.  Subsequently, her body was set on fire and burned beyond recognition.  Id.

A grand jury returned a three-count indictment on April 26, 2018, charging Rodríguez-Santos with aiding and abetting a carjacking resulting in death in violation of 18 U.S.C. §§ 2119(3) and (2) (count one), aiding and abetting a kidnapping resulting in death in violation of 18 U.S.C. §§ 1201(a)(1) and (2) (count two), and aiding and abetting the use and carry of a firearm during and in relation to a crime of violence resulting in death in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j) (count three).  (Docket No. 3.)  Rodríguez-Santos pled not guilty, exercising his Sixth Amendment right to a trial by jury.  (Docket Nos. 12, 95, 97, 98 and 104.)  Three witnesses testified that they observed Rodríguez-Santos, Luis Jiménez-Medina ("Jiménez"), and Agustín Bodón-Lespier

("Bodón") beat, kidnap and carjack Mayol on the day of her death. (Docket Nos. 100 and 101.)  Rodríguez-Santos testified in his own defense.  (Docket No. 102 at pp. 26—68.)  Ultimately, the jury found Rodríguez-Santos guilty on all counts.  (Docket No. 109.)

Rodríguez-Santos moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  (Docket No. 111.) According to Rodríguez-Santos, "the evidence at trial was insufficient for a rational jury to find guilt as to Counts 1, 2, and 3." Id. at p. 2.

## II.  Federal Rule of Criminal Procedure 29

A court may set aside a jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  See Fed.R.Crim.P. 29.  In reviewing a motion for judgment of acquittal, a court must consider the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt."  United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).

Rule 29 motions require a court to "take into account all evidence, both direct and circumstantial, and [to] resolve evidentiary conflicts and credibility disputes in favor of the

jury's verdict." United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012). Defendants seeking acquittal on this basis "face an uphill battle." United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010); United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (referring to the sufficiency of evidence burden as a "daunting hurdle.") (internal quotation marks omitted).

While the sufficiency of the evidence is at the heart of the Rule 29 inquiry, deference to the jury's verdict informs the Court's analysis. To uphold the jury's guilty verdict, the Court need only determine that the guilty verdict "finds support in a plausible rendition of the record." See United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012).

**III. Elements of the Charged Offenses**

The jury had to find that the United States proved each element of the charged offenses beyond a reasonable doubt to convict Rodríguez-Santos. See Powell v. Tompkins, 783 F.3d 332, 354 (1st Cir. 2015) ("The Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.") (quoting McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986)). The grand jury charged Rodríguez-Santos with aiding and abetting the commission of the carjacking, kidnapping, and firearm offenses, requiring the United States to prove that he "consciously

shared the principal's knowledge of the underlying criminal act, and intended to help the principal." United States v. Otero-Méndez, 273 F.3d 46, 51 (1st Cir. 2001); United States v. Fernández-Jorge, 894 F.3d 36, 43 (1st Cir. 2018) (aiding and abetting labiality is triggered "if (and only if) [the defendant] (1) makes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission"). "It is axiomatic that an aiding and abetting conviction requires proof that the substantive crime has been committed." United States v. Cry, 712 F.2d 729, 732 (1st Cir. 1983).

### A.   Count One:  Carjacking Resulting in Death

Carjacking resulting in death consists of five elements: (1) the taking or attempted taking from a person of, (2) a motor vehicle transported, shipped or received in interstate or foreign commerce, (3) through the use of force, violence, or by intimidation, (4) with intent to cause death or serious bodily harm, (5) that results in death.  18 U.S.C. § 2119(3); see United Sates v. Castro Davis, 612 F.3d 53, 61 (1st Cir. 2010).[2]

### B.   Count Two:  Kidnapping Resulting in Death

The Federal Kidnapping Act provides that whoever: (1) unlawfully seizes, confines, inveigles, decoys, kidnaps,

---

[2] The United States and Rodríguez-Santos stipulated that the Mitsubishi Lancer was "manufactured in Japan and was therefore transported, shipped or received in interstate or foreign commerce prior to October 10, 2015." (Docket No. 96.)

abducts, or carries away, and (2) holds for ransom or reward or otherwise any person, (3) using an instrumentality of interstate or foreign commerce, (4) within the territorial jurisdiction of the United States, (5) shall be punished by death or life imprisonment if death resulted. 18 U.S.C. § 1201(a)(1) and (2); see United States v. Brown, 295 F.3d 152, 155 (1st Cir. 2002).

**C. Count Three: Use and Carry of a Firearm During a Crime of Violence Resulting in Death**

The elements of 18 U.S.C. § 924(c)(1)(A) are twofold. (1) that the defendant committed a crime of violence (*i.e.* kidnapping or carjacking), and (2) that the defendant knowingly used or carried a firearm during and in relation to that crime. 18 U.S.C. § 924(c)(1)(A). Section 924(c) is a lesser included offense of section 924(j). United States v. García-Ortiz, 657 F.3d 25, 28 (1st Cir. 2011). "The only meaningful difference is that section 924(j) requires proof of one additional fact: the death." Id.

**IV. The Evidence Presented at Trial**

Melissa Cartagena-Vives ("Cartagena"), Ricardo Pagán-Rodríguez ("Pagán"), and Enidza Rodríguez-Figueroa ("Rodríguez-Figueroa") witnessed the carjacking and kidnapping. Cartagena and Pagán are married. (Docket No. 101 at p. 16.) The witnesses

recognized Rodríguez-Santos because he operated a hotdog stand in Ponce.  Id. at p. 28.

On October 10, 2015, Cartagena and Pagán were in front of their home, repairing the headlights on their car.  Id. at p. 17. Cartagena observed a white Mitsubishi Lancer arrive on her street. Id. at p. 18.  A neighbor requested that Cartagena speak with the driver of the Mitsubishi Lancer, an unknown woman who appeared "beat up," "in despair," and drunk.  Id.  Cartagena later identified the woman to law enforcement officers as María Mayol-Rivera.  Id. at p. 19.

Cartagena approached Mayol, offering to "call the police because she was in a bad state."  Id.  Instead, Mayol asked Cartagena to "go with her to find the guys who hit her."  Id. at p. 20.  Cartagena continued to speak with Mayol, attempting to "help her out."  Id. at p. 21.  A bottle of rum, marijuana, and cocaine were inside the Mitsubishi Lancer.  Id. at p. 20. Cartagena searched inside Mayol's purse to "find a phone number to contact anybody, because [Mayol] didn't want [Cartagena] to call the police."  Id. at p. 21.

Approximately five minutes later, Cartagena received a phone call from Jiménez, "telling [Cartagena] to get that person out of there."  Id. at p. 22.  Cartagena observed that Jiménez was in front of her home, reiterating on the phone to "get [the woman]

out of there" and that the woman was a federal officer. Id.
Jiménez fired a gun. Id. at p. 24. Shortly after, a blue Dodge
Dakota driven by Bodón arrived. Id. at p. 27. Jiménez and
Rodríguez-Santos were in the back and front passenger seats,
respectively. Id. at p. 28. Jiménez, Rodríguez-Santos, and Bodón
told Cartagena to "take away [her] kids." Id. at p. 30.

Mayol exited the Mitsubishi Lancer and screamed that "it was
them who had given her the beating." Id. at pp. 35—36. Mayol
threw a bottle of liquor at the Dodge Dakota. Id. at p. 36.
Rodríguez-Santos grabbed Mayol, hit her head against the rearview
mirror, and forced her inside the Mitsubishi Lancer. Id. at p. 37.
Jiménez "grabbed hold of [Mayol]," put her in the back seat, and
hit her. Id. at p. 37. Cartagena observed that Jiménez had a
tank of gasoline. Id. Bodón drove away in the Dodge Dakota. Id.
Rodríguez-Santos followed in the Mitsubishi Lancer with Mayol and
Jiménez in the back seat. Id. at p. 38. Cartagena did not call
the police, fearing "for [her] life and [her] kid's life because
of how the situation went down." Id. at p. 38. A week after the
carjacking, Jiménez "came inside [Cartagena's] home without any
permission to do so" and "threatened [her] in front of [her] kids."
Id. at p. 39.

Pagán and Rodríguez—Figueroa provided testimony that
corroborated Cartagena's account of the carjacking. (Docket

No. 101 at pp. 64—79, 87—114.) Law enforcement officers obtained
two surveillance videos from businesses located along the route
from Cartagena's home to the scene of the fire on State Road
No. 504. (Docket No. 100 at pp. 91—92.) The surveillance videos
"show both vehicles going up and only [the Dodge Dakota] going
back down . . . obviously, the Mitsubishi Lancer was found at the
crime scene." Id. at p. 93. Five 9mm bullet casings were recovered
near Mayol's body, and a "projectile fragment was recovered from
[Mayol's] left arm." (Docket No. 100 at pp. 139 and 157.) The
"bullet wounds were produced while [Mayol] was still alive" because
"damage presented in the encephalic mass . . . If the bullet wounds
had been caused after the burns, then there would not have been
any bleeding the encephalic mass." Id. at p. 157. A forensic
chemist detected the presence of gasoline on Mayol's corpse and
clothing. (Docket No. 101 at p. 85.)

Rodríguez-Santos took the stand at trial. (Docket No. 102 at
p. 26.) He testified that Bodón, Jiménez, and an individual named
Chewi carjacked and abducted him on October 10, 2015. Id. at
p. 31. The alleged assailants placed a bag over Rodríguez-Santos'
head and drove to Cartagena's home in the Dodge Dakota. Id. at
p. 36. Rodríguez-Santos testified that Jiménez "went over to the
girl and grabbed her, and Chewi took the keys and stayed at the
front of the car." Id. at p. 36. Jiménez placed Mayol in the

Mitsubishi Lancer and drove away. Id. Bodón, Chewi, and
Rodríguez-Santos followed in the Dodge Dakota. Id. at p. 38. The
Mitsubishi Lancer and Dodge Dakota stopped by a large mango tree,
where Chewi retrieved a red gasoline tank from an "old small
Mazda 232." Id. at p. 39.

Jiménez, Bodón, Chewi, Rodríguez-Santos, and Mayol traveled
to State Road No. 504. Id. Bodón told Rodríguez-Santos to "[s]tep
out of the truck and kneel," a position which allowed Rodríguez-
Santos to witness Mayol's murder. Id. at p. 41. Jiménez ordered
Mayol to exit the Mitsubishi Lancer "so that he could pour the gas
over the white car." Id. at p. 42. Chewi set the Mitsubishi
Lancer on fire. Id. at p. 43. Bodón attempted to hand Jiménez a
firearm to kill Mayol, but Jiménez refused. Id. After Bodón shot
Mayol, he pointed the gun at Rodríguez-Santos. Id. at p. 44.
Bodón poured gasoline on Mayol. Id. Rodríguez-Santos offered
Jiménez, Bodón, and Chewi "$200 a week so [they] wouldn't kill
[him]." Id. at p. 45.

Jiménez, Bodón, and Chewi drove Rodríguez-Santos to a public
housing project. Id. at p. 46. Bodón requested Antonio Rosado-
Colón ("Rosado"), a mechanic, to repair a bullet hole in the Dodge
Dakota's front passenger door. Id. Rosado requested that Bodón
return the next day. Id. Chewi told Rodríguez-Santos "you already
know what's going to happen if you rat us out." Id. at pp. 46-47.

Jiménez stated to Chewi and Bodon: "If he rats us out, or anything happens to us, I know where he lives, and I know his mom." Id. at p. 47. Rodríguez-Santos did not state how he returned home on October 10, 2015. Id. He testified, however, that he and Bodón returned to the public housing project on October 11, 2015 for Rosado to repair the Dodge Dakota. Id. at p. 49. Rodríguez-Santos did not tell anyone about his abduction or Mayol's murder "out of fear that something would happen to [his] family." Id. at p. 51.

The United States called Rosado as a rebuttal witness the day after Rodríguez-Santos testified. (Docket No. 103 at pp. 6—17.) Rosado's testimony contradicted Rodríguez-Santos' testimony. According to Rosado, Rodríguez-Santos "dropped off the blue [Dodge Dakota] on October 11, 2105" and "[h]e was alone." Id. at p. 10. Rodríguez-Santos requested that Rosado "fix the car," left, and returned in the afternoon. Id. at p. 11. When Rodríguez-Santos returned, he was alone. Id. at p. 13. Rosado also saw Jiménez on October 11, 2015, but after Rodríguez picked up the Dodge Dakota. Id. at p. 14.

## V. The United States Presented Sufficient Evidence to Sustain a Finding of Guilt as to all Counts

Rodríguez-Santos argues that a judgement of acquittal is warranted because "the testimony of government witnesses Melissa

Cartagena-Vives, Enidza Rodríguez-Figueroa and Ricardo Pagán-
Rodríguez did contradict during the course of the instant jury
trial." (Docket No. 111 at p. 3.) He cites two contradictions:
(1) Cartagena testified that she observed Jiménez hold a firearm
and heard a gunshot, but Rodríguez-Figueroa did not; and
(2) Cartagena testified she "didn't know where [Jiménez] got [her
phone] number," but Rodríguez-Figueroa observed the name "Luis
Miguel" on Cartagena's phone. (Docket No. 101 at pp. 21, 24, 95
and 105.) Because Cartagena and Rodríguez-Figueroa provided
inconsistent testimony, Rodríguez-Santos argues, "no rational jury
could find beyond a reasonable doubt that the defendant was guilty
of the charges of conviction." (Docket No. 111 at p. 4.)

The contradictions between Cartagena and Rodríguez-Figueroa's
recollections of what they observed on October 10, 2015 are
negligible. Both witnesses testified that: Rodríguez-Santos
arrived with Jiménez and Bodón in a Dodge Dakota, Rodríguez-Santos
grabbed Mayol by the head and hit her against the rearview mirror,
Jiménez pulled Mayol to the backseat of the Mitsubishi Lancer and
hit her, and that Rodríguez-Santos drove away with Jiménez and
Mayol in the backseat as Bodon followed in the Dodge Dakota.
(Docket No. 101 at pp. 13—51, 87—114.) Whether Cartagena indeed
heard a gunshot or saved Jiménez's contact information in her
cellular phone prior to October 10, 2015 are inconsequential in

light of the evidence presented at trial.  See United States v. Guzmán-Montañez, 756 F.3d 1, 9 (1st Cir. 2014) ("The mere existence of conflicting testimony does not render evidence insufficient.") (citing United States v. Rodríguez, 457 F.3d 109, 119 (1st Cir. 2006) ("Evidence does not become legally insufficient merely because of some inconsistencies in witnesses' testimony.")).

The jury convicted Rodríguez-Santos and rejected his abduction defense, determining that the United States' witnesses were more credible.  See United States v. Ayala-García, 574 F.3d 5, 11 (1st Cir. 2009) ("The government's evidence is not insufficient simply because the defense presented a competing scenario through its own witnesses.").  The Court is "not a thirteenth juror, much less is he a super-juror whose views of credibility could override the jury's verdict." United States v. Freeman, 208 F.3d 332, 343 (1st Cir. 2000) (citation and internal quotation omitted).  A reasonable jury could believe Cartagena and Rodríguez-Figueroa, irrespective of the minor contradictions in their respective testimonies.  See United States v. Patel, 370 F.3d 108, 112 (1st Cir. 2004) ("Where the jury hears conflicting testimony, it decides which version to credit."); see, e.g., United States v. Bradley, 643 F.3d 1121, 1126 (8th Cir. 2011) (holding that "minor inconsistencies in the testimony of [the three witnesses] do not warrant acquittal because it was within the

jury's province, as the finder of fact, to resolve these inconsistencies and to accord what weight it desired to the testimony."). Accordingly, Rodríguez-Santos' motion for a judgment of acquittal is **DENIED**. (Docket No. 111.)

## VI. A New Trial Pursuant to Federal Rule of Criminal Procedure 33 is Not Warranted

"Motions for a new trial are directed to the discretion of the trial court." United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980). Pursuant to Rule 33, a trial court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). A defendant may base his or her motion for a new trial on newly discovered evidence or on other grounds, but "[t]he remedy of a new trial must be used sparingly and only where a miscarriage of justice would otherwise result." Fed.R.Crim.P. 33(b); United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009) (internal citation and quotation marks omitted). Rodríguez-Santos does not present any newly discovered evidence or assert that a miscarriage of justice occurred. Accordingly, Rodríguez-Santos request for a new trial is **DENIED**.

## VII. Conclusion

For the reasons set forth above, Rodríguez-Santos' Rule 29 motion for judgment of acquittal is **DENIED**. (Docket No. 111.) Rodríguez-Santos' request for a new trial is also **DENIED**. Id.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, June 6, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
